UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF JOLIET, an Illinois municipal corporation, | ) ) ) |
| Plaintiff, | ) No. 05 C 6746 ) ) |
| v. | ) Honorable Charles R. Norgle ) |
| MID-CITY NATIONAL BANK of CHICAGO, as Successor Trustee to United of America Bank, et al., | ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Plaintiff City of Joliet's Motion for Judgment on the Pleadings with Respect to the Supremacy Clause Defense. For the following reasons, the Motion is granted.

**I. BACKGROUND**

**A. Facts**

Plaintiff City of Joliet, Illinois ("Joliet" or the "City") alleges the following facts in its Amended Complaint for Condemnation. Joliet is authorized under the Illinois Municipal Code to exercise the right of eminent domain to acquire real property, *inter alia*, (1) for the public welfare, (2) where acquisition of such property is necessary for the rehabilitation or redevelopment of any blighted or slum area, or (3) where acquisition of such property is necessary for the establishment of public parks, other public grounds, or recreational facilities. Joliet has determined that the apartment complex known as Evergreen Terrace I and Evergreen

1

Terrace II (together, "Evergreen Terrace" or the "Property") is, *inter alia*, (1) extremely dilapidated, unsafe, substandard, unsanitary, crime-infested, a substantial threat to the health, welfare and safety of its residents, (2) a "blighted or slum area" under the Illinois Municipal Code, (3) interfering with the lawful use of nearby properties, and (4) diverting important public resources such as police and fire protection from nearby properties.

Joliet therefore entered into good faith negotiation with the owners of Evergreen Terrace for the purpose of acquiring it, and authorizing the use of the city's eminent domain powers to eliminate the blighted conditions existing there. Joliet and the owners of Evergreen Terrace, however, have been unable to reach an agreement on the price to be paid for the Property. Joliet therefore approved and adopted local Ordinance No. 15298 in order to begin eminent domain proceedings to acquire Evergreen Terrace. The City proposes to redevelop the Property to include a public park, a recreational area, and affordable housing.

## B. Procedural History

On October 7, 2005, Joliet filed its Complaint for Condemnation in the Circuit Court of Will County, Illinois. Joliet purportedly filed this Complaint against all persons and entities having an interest in Evergreen Terrace. One of those Defendants was the Government National Mortgage Association ("GNMA"). GNMA is an agency of the United States government. On November 29, 2005, the United States Attorney for the Northern District of Illinois removed this case to the Northern District of Illinois. On February 27, 2006, the court granted Joliet's Motion to Voluntarily Dismiss GNMA, but denied Joliet's Motion to Remand, finding that the United States Department of Housing and Urban Development ("HUD") had a reversionary interest in the Property. The court granted Defendants' Rule 19(a) Motion to Join HUD as a Necessary Party on March 9, 2006.

On July 5, 2007, the Seventh Circuit entered an Opinion in a related case, New West, L.P. v. City of Joliet, – F.3d –, 06-3665 (7th Circuit July 5, 2007). In this related case, the owners of Evergreen Terrace sued Joliet, alleging that the Supremacy Clause prohibits the condemnation of the Property, that the City's activities related to the condemnation violate 42 U.S.C. §§ 1982 and 1983, and that Joliet has violated the Fair Housing Act, 42 U.S.C. §§ 3601-19, by discouraging prospective minority tenants from living in Evergreen Terrace. Id., slip. op. at 2. This court dismissed the case, but the Seventh Circuit reversed and remanded. In so doing, the Seventh Circuit indicated that this court must first resolve the condemnation suit before proceeding on the related case. Id., slip. op. at 3. Writing for the Seventh Circuit, Chief Judge Easterbrook indicated that there was no federal impediment to Joliet's exercise of eminent domain in this case. "If Joliet thinks that a given parcel of land should be put to a public use, such as a park, and is willing to foot the bill, it is hard to see any obstacle in federal law." Id., slip. op. at 6.

Following the Seventh Circuit's Opinion in the New West case, this court issued a Minute Order in the instant condemnation case in which it granted Joliet leave to refile its Motion for Summary Judgment. This Motion will become fully briefed on approximately September 10, 2007.

In the meantime, Joliet has filed the instant Motion for Judgment on the Pleadings with Respect to the Supremacy Clause Defense. Joliet has filed this Motion in response to HUD's third affirmative defense in this case, which asserts that "[t]he Supremacy Clause of the United States Constitution prohibits the City of Joliet from exercising eminent domain over or condemning the defendant Evergreen Terrace properties." In its Motion for Judgment on the Pleadings, Joliet argues that federal law does not preempt the Illinois Municipal Code, or the

City's local ordinance, regarding the eminent domain action against Evergreen Terrace. This Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Federal Rule of Civil Procedure 12(h)(2) provides that "an objection of failure to state a legal defense to a claim may be made . . . by a motion for judgment on the pleadings." Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Plaintiff's Motion for Judgment on the Pleadings with Respect to the Supremacy Clause Defense is appropriately and timely presented to the court.

#### *1. Preemption*

The Supremacy Clause of the United States Constitution provides, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the Land." U.S. CONST., art. VI, cl.2. This Clause does not create any federal rights; instead, it "'secures federal rights by according them priority whenever they come in conflict with state law.'" Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 107 (1989) (quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 613 (1979)). The Supremacy Clause therefore "support[s] three ways in which federal law can preempt state and local law: express preemption, conflict (or implied) preemption, and field (or complete) preemption." Hoagland v. Town of Clear Lake, 415 F.3d 693, 696 (7th Cir. 2005). The only type of preemption at issue in this case, conflict preemption, occurs where "it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (quoting Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995)).

Courts are to presume that "'Congress does not intend to supplant state law.' This is particularly true where a party claims that federal law bars state action in areas of traditional state regulation . . . ." Frank Bros., Inc. v. Wis. DOT, 409 F.3d 880, 885 (7th Cir. 2005) (quoting N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995)); City of Columbus v. Ours Garage & Wrecker Serv., 536 U.S. 424, 432 (2002) ("we start with the assumption that the historic police powers of the States were not to be superceded by [a] Federal Act unless that was the clear and manifest purpose of Congress.") (internal quotation marks and citation omitted). The burden therefore falls on the party asserting preemption to demonstrate that Congress clearly intended to override whatever state law is at issue. See In re Ocwen Federal Bank FSB Mortgage Servicing Litgation, MDL No. 1604, Lead Case No. 04 C 2714, 2006 U.S. Dist. LEXIS 21715 (N.D. Ill. March 22, 2006).

## 2. *Eminent Domain*

It is well-established law that municipalities may use eminent domain procedures to condemn and take private property for a legitimate public purpose. Kelo v. City of New London, 545 U.S. 469 (2005) (holding that a city's carefully considered redevelopment plan was not unconstitutional, even where property would be taken from private parties and given to other private parties); Hawaii Housing Authority v. Midkiff, 467 U.S. 229 (1984) (holding that a Hawaii statute under which property was taken from private landowners and transferred to lessees, in order to eliminate the "social and economic evils of land oligopoly" met the standards of a valid public use); Berman v. Parker, 348 U.S. 26 (1954) (upholding a redevelopment plan

targeting a blighted area of Washington, D.C.). It is also well-established that when municipalities exercise the power of eminent domain, "the government must pay the owner just compensation, which is determined to be the property's fair market value." Shaikh v. City of Chicago, 341 F.3d 627, 632 (7th Cir. 2003) (citing United States v. Miller, 317 U.S. 369, 373-74 (1943); United States v. 58.16 Acres of Land, 478 F.2d 1055, 1058 (7th Cir. 1973)).

In adjudicating takings cases, the Supreme Court has long deferred to the judgment of local legislatures as to whether a particular taking serves a "public purpose." Kelo, 545 U.S. at 480.

> We do not sit to determine whether a particular housing project is or is not desirable. The concept of the public welfare is broad and inclusive . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled . . . If those who govern the District of Columbia decide that the Nation's Capital should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way.

Berman, 348 U.S. at 33. The Kelo court reaffirmed Berman's "deferential approach to legislative judgments in the field," and noted that the Supreme Court's "earliest cases in particular embodied a strong sense of federalism, emphasizing the great respect that we owe to state legislatures and state courts in discerning local public needs." Kelo, 545 U.S. at 482 (citing Hairston v. Danville & Western R. Co., 208 U.S. 598, 606-07 (1908)); see also National Ass'n of Regulatory Utility v. F.E.R.C., 475 F.3d 1277, 1287 (D.C. Cir. 2007) ("Courts have long recognized that eminent domain is at the very core of state sovereignty."). The court will therefore adopt a "deferential approach" to the decisions of the local legislature as it analyzes the issues specific to the instant motion, as well as issues relevant to this entire case.

## B. Plaintiff's Motion for Partial Judgment on the Pleadings

Defendants, with the exception of HUD, have filed a joint brief in opposition to Plaintiff's Motion. HUD, represented by the United States Attorney's office, has filed a separate brief in opposition to this Motion. Defendants Mid-City National Bank of Chicago, et al., argue that the Supremacy Clause prohibits Joliet from condemning Evergreen Terrace because the federal government has a substantial interest in the Property, and the State laws and the local ordinance permitting the condemnation are preempted by HUD regulations, Section 8 of the United States Housing Act, and the Multifamily Assisted Housing Reform and Affordability Act ("MAHRA"). HUD asserts that Joliet's eminent domain action, carried out pursuant to state law, is preempted by HUD regulations, MAHRA, as well as the Property Clause and the Contract Clause of the United States Constitution.[1] Defendants also argue that Judge Easterbrook's statement, "[i]f Joliet thinks that a given parcel of land should be put to a public use, such as a park, and is willing to foot the bill, it is hard to see any obstacle in federal law," New West, slip. op. at 6, is mere dictum, and should therefore have no bearing on this court's adjudication of the instant motion.

Defendants first argument, that the federal government's interest in Evergreen Terrace prohibits Joliet from exercising eminent domain over the Property, stems from HUD's mortgage and reversionary interests in Evergreen Terrace. In HUD's answer to the Amended Complaint, HUD explains that

---

[1] The court notes that the instant Motion references only the Supremacy Clause and related preemption issues. Issues regarding the Property and Contract Clauses are not properly before the court at this point.

7

> [i]n addition to HUD being a mortgage holder on Evergreen Terrace I and II, the incorporated regulatory agreements provide that in the event of a HUD-non-authorized transfer of the defendant properties, such as the subject condemnation action, the HUD Secretary would have the right to take possession of the properties, as well as foreclose on the mortgages.

It is undisputed, however, that at present, Evergreen Terrace is privately owned property. Its owners have a voluntary contractual relationship with HUD which gives HUD the above described interests in the Property. HUD, however, does not own Evergreen Terrace. HUD's reliance on Shaikh, in which the Seventh Circuit observed that the City of Chicago could not pursue condemnation proceedings against HUD-owned property, is therefore misplaced. The owners of Evergreen Terrace are private parties. In Shaikh, the Seventh Circuit warned that a private party "'who acquires or occupies land does so at the risk of being evicted by the exercise of the superior right of the government or its delegate to acquire his interest upon payment of just compensation.'" 341 F.3d at 631 (quoting United States v. 16.92 Acres of Land, 670 F.2d 1369, 1371 (7th Cir. 1982)). Moreover, "HUD's regulations implementing the § 8 program contemplate the possibility of the parcel's condemnation; they do not purport to forbid condemnations." New West, slip. op. at 6. HUD's mortgage and reversionary interest in Evergreen Terrace is thus not an impediment to Joliet's plan to exercise its power of eminent domain over the Property.

Defendants' arguments that federal statutes preempt Joliet's attempt to exercise its power of eminent domain over Evergreen Terrace are also unavailing. "New West contends that § 8 and the Fair Housing Act prevent condemnation of Evergreen Terrace, but it does not rely on any particular provision of that statute. Section 8 is a subsidy program, a carrot rather than a stick." Id. In other words, the § 8 program was designed to encourage private property owners to

8

provide low-income housing – there is simply no basis on which to conclude that Congress intended for this program to also preempt local governments' use of their powers of eminent domain. See Baker v. Property Investors of Conn., 338 F. Supp. 2d 321, 323 (D. Conn. 2004) ("Section 8 of the Housing Act 'aids low-income families in obtaining a decent place to live and . . . promotes economically mixed housing' . . . by providing federal subsidies to private building owners who are willing to rent to low-income families.") (internal citation omitted). In enacting MAHRA, Congress intended to, *inter alia*, "preserve low-income rental housing affordability and availability . . . streamline and improve federally insured and assisted multifamily housing project oversight . . . [and] to resolve the problems affecting financially and physically troubled federally insured and assisted multifamily housing projects . . . ." MAHRA § 511(b); see also Neighborhood Research Inst. v. Campus Ptnrs. for Cmty. Urban Dev., 212 F.R.D. 364, 366-67 (S.D. Ohio 2002). Once again, there is simply no basis on which to conclude that MAHRA was intended to preempt local municipalities' ability to exercise their powers of eminent domain.

Finally, it is arguable that Judge Easterbrook's observation that "it is hard to see any obstacle in federal law" to Joliet's condemnation of Evergreen Terrace is indeed *dictum proprium*: "[a] personal or individual [statement] that is given by the judge who delivers an opinion but that is not necessarily concurred in by the whole court and is not essential to the disposition." BLACK'S LAW DICTIONARY 485 (8th ed. 2004). However, the court cannot presume that a statement by the Chief Judge of the Seventh Circuit Court of Appeals carries no weight simply because it may be dictum. To the contrary, in our hierarchical judicial system, a federal district court must take the observations of its appellate court very seriously, regardless of whether these observations are contained in the higher court's holdings, or are indeed simply

9

dicta. "[A] federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of dictum . . . [W]e cannot presume that our Court of Appeals writes merely for intellectual exercise." Pickett v. Prince, 52 F. Supp. 2d 893, 904 (N.D. Ill. 1999) (internal quotation marks and citation omitted). The court has thoroughly considered the observations of Chief Judge Easterbrook and has independently reached the conclusion that they are correct. Moreover, it is not unusual for the Seventh Circuit to offer guidance to district courts or parties. Even where such guidance is not "essential to the disposition" of the case, a district court or party overlooks it at its peril. See Blue Cross Blue Shield of Illinois v. Cruz, No. 03-4170, slip op. at 8 (7th Cir. July 27, 2007). The court therefore declines Defendants' invitation to ignore Judge Easterbrook's observation regarding the lack of any federal impediment to Joliet's condemnation of Evergreen Terrace.

### III. CONCLUSION

As the court has noted, it is Defendants' burden to demonstrate to the court that federal law preempts Joliet's attempt to condemn and redevelop Evergreen Terrace. Defendants have failed to meet this burden. Plaintiff City of Joliet's Motion for Judgment on the Pleadings with Respect to the Supremacy Clause Defense is therefore granted.

IT IS SO ORDERED.

ENTER:

*Charles R Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: August 3, 2007