UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF JOLIET, an Illinois Municipal Corporation, | ) ) ) | 05 C 6746 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Honorable Charles R. Norgle |
| MID-CITY NATIONAL BANK OF CHICAGO, et al., | ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court are two Motions for Summary Judgment, one filed by Defendant United States Department of Housing and Urban Development ("HUD") and the other filed jointly by the remaining Defendants. For the following reasons, the Motions are denied.

### I. BACKGROUND

#### A. Facts

Plaintiff City of Joliet, Illinois ("Joliet" or the "City") is authorized under the Illinois Municipal Code to exercise the right of eminent domain to acquire real property, *inter alia*, (1) for the public welfare, (2) where acquisition of such property is necessary for the rehabilitation or redevelopment of any blighted or slum area, or (3) where acquisition of such property is necessary for the establishment of public parks, other public grounds, or recreational facilities. Joliet has determined that the apartment complex known as Evergreen Terrace I and Evergreen Terrace II (together, "Evergreen Terrace" or the "Property") is, *inter alia*, (1) extremely

1

dilapidated, unsafe, substandard, unsanitary, crime-infested, a substantial threat to the health, welfare and safety of its residents, (2) a "blighted or slum area" under the Illinois Municipal Code, (3) interfering with the lawful use of nearby properties, and (4) diverting important public resources such as police and fire protection from nearby properties. It is undisputed that Evergreen Terrace is federally subsidized low-income housing, owned by private parties. The parties dispute, however, the extent to which various mortgage and regulatory agreements give HUD an interest in the Properties.

Joliet entered into good faith negotiation with the owners of Evergreen Terrace for the purpose of acquiring it, and authorizing the use of the city's eminent domain powers to eliminate the blighted conditions existing there. Joliet and the owners of Evergreen Terrace, however, have been unable to reach an agreement on the price to be paid for the Property. Joliet therefore approved and adopted local Ordinance No. 15298 in order to begin eminent domain proceedings to acquire Evergreen Terrace. The City proposes to redevelop the Property to include a public park, a recreational area, and affordable housing.

## B. Procedural History

On October 7, 2005, Joliet filed its Complaint for Condemnation in the Circuit Court of Will County, Illinois. Joliet purportedly filed this Complaint against all persons and entities having an interest in Evergreen Terrace. One of those Defendants was the Government National Mortgage Association ("GNMA"). GNMA is an agency of the United States government. On November 29, 2005, the United States Attorney for the Northern District of Illinois removed this case to the Northern District of Illinois. On February 27, 2006, the court granted Joliet's Motion to Voluntarily Dismiss GNMA, but denied Joliet's Motion to Remand, finding that HUD had a

reversionary interest in the Property. The court granted Defendants' Rule 19(a) Motion to Join HUD as a Necessary Party on March 9, 2006.

On July 5, 2007, the Seventh Circuit entered an Opinion in a related case, <u>New West, L.P. v. City of Joliet</u>, 491 F.3d 717 (7th Cir. 2007). In this related case, the owners of Evergreen Terrace sued Joliet, alleging that the Supremacy Clause prohibits the condemnation of the Property, that the City's activities related to the condemnation violate 42 U.S.C. §§ 1982 and 1983, and that Joliet has violated the Fair Housing Act, 42 U.S.C. §§ 3601-19, by discouraging prospective minority tenants from living in Evergreen Terrace. <u>Id.</u> at 719. This court dismissed the case, but the Seventh Circuit reversed and remanded. In so doing, the Seventh Circuit indicated that this court must first resolve the condemnation suit before proceeding on the related case. <u>Id.</u> at 721. Writing for the Seventh Circuit, Chief Judge Easterbrook indicated that there was no federal impediment to Joliet's exercise of eminent domain in this case. He stressed that "[i]f Joliet thinks that a given parcel of land should be put to a public use, such as a park, and is willing to foot the bill, it is hard to see any obstacle in federal law." <u>Id.</u>

Following the Seventh Circuit's Opinion in the <u>New West</u> case, this court issued a Minute Order in the instant condemnation case in which it granted Defendants leave to refile their Motion for Summary Judgment. Defendants have since timely filed separate Motions for Summary Judgment. These Motions are fully briefed and before the court.[1]

---

[1] On August 3, 2007, the court issued an Opinion and Order granting Joliet's Motion for Judgment on the Pleadings with Respect to the Supremacy Clause Defense. Defendants' Summary Judgment arguments regarding the Supremacy Clause are therefore moot.

3

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When the defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that

support the plaintiff's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Defendants' Motions for Summary Judgment

In support of their Motions for Summary Judgment, Defendants collectively make the following assertions. Certain portions of the United States Constitution bar Joliet's condemnation of Evergreen Terrace: the Supremacy Clause, the Property Clause, and the Contracts Clause. The doctrine of intergovernmental immunity bars Joliet's condemnation of Evergreen Terrace. Joliet is equitably estopped from condemning Evergreen Terrace. The Complaint in this case is insufficient. The court has already determined that the Supremacy Clause does not preempt Joliet's attempt to condemn Evergreen Terrace. See Opinion and Order of August 3, 2007.

### 1. *The Property Clause*

The Property Clause of the United States Constitution provides, "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. CONST., art. IV, § 3, cl. 2. By its express terms, the Property Clause applies only to property owned by the United States. In this case, there is no question that Evergreen Terrace is privately owned, although the parties dispute the extent to which HUD has various contractual and reversionary interests in the Property.

Even if Evergreen Terrace were somehow owned by the United States, however, the Property Clause has never been interpreted as an impediment to the application of state law or

5

regulations such as this condemnation action. "The Property Clause itself does not automatically conflict with all State regulation of federal land." California Coastal Comm. v. Granite Rock Co., 480 U.S. 572, 580 (1987). "[F]ederal ownership of lands within a State does not withdraw those lands from the jurisdiction of the State." Kleppe v. New Mexico, 426 U.S. 529, 544 (1976) (citing Wilson v. Cook, 327 U.S. 474, 487-88 (1946) and Surplus Trading Co. v. Cook, 281 U.S. 647, 650 (1930)). The Property Clause therefore has no bearing on this case.

## 2. *The Contracts Clause*

The Contracts Clause of the United States Constitution provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. CONST., art. I, § 10, cl. 1. Courts do not interpret the Contracts Clause literally. Chrysler Corp. v. Kolosso Auto Sales, Inc., 148 F.3d 892, 894 (7th Cir. 1998). "Even big, totally unpredictable impairments of the obligation of contracts can survive challenges under the contracts clause if they are responsive to economic emergencies . . . and even to considerably less exigent needs." Id. at 896 (internal citations omitted). If the state law at issue "serve[s] a legitimate public purpose such as remedying a general social or economic problem," and "the means chosen to accomplish this purpose are reasonable and necessary," the law does not run afoul of the Contracts Clause. Buffalo Teachers Federation v. Tobe, 464 F.3d 362, 368 (2nd Cir 2006) (citing Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411-13 (1983)).

At the summary judgment stage of this litigation, the court cannot say as a matter of law that Joliet's proposed condemnation of Evergreen Terrace serves no legitimate public purpose, and is not a reasonable means of remedying what Joliet perceives to be a "general social or economic problem." See id. The undisputed facts establish that Joliet plans to redevelop the

6

Property to include various public benefits. Defendants' Contracts Clause assertions in support of their Motions for Summary Judgment therefore fail.

### 3. Intergovernmental Immunity

The concept of intergovernmental immunity has its roots on the Supremacy Clause of the United States Constitution.

> [T]he States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared.

McCulloch v. Maryland, 17 U.S. 316, 435 (1819). The court has already determined that the Supremacy Clause is no bar to Joliet's attempt to condemn Evergreen Terrace. See Opinion and Order of August 3, 2007. Moreover, intergovernmental immunity has never been extended to private parties. It is clear that the Supremacy Clause forbids States from directly taxing or regulating the United States, United States v. New Mexico, 455 U.S. 720, 733 (1982), or "federally established instrumentalit[ies]." First Agricultural Bank v. State Tax Commission, 392 U.S. 339, 350 (1968). However, where State taxation or regulation merely "has an effect on the United States," intergovernmental immunity does not apply." New Mexico, 455 U.S. at 734. As the court has repeatedly explained, Evergreen Terrace is privately owned property. It is clearly not a "federally established instrumentality." The court therefore cannot find, as a matter of law, that the doctrine of intergovernmental immunity prevents Joliet from proceeding with its condemnation action.

### 4. Equitable Estoppel

HUD asserts that Joliet is equitably estopped from finding that one of the Evergreen Terrace buildings is blighted. In making this assertion, HUD relies exclusively on language in a contract it has with Joliet which provides that Joliet is to inspect the building in question annually in order to assure that it is safe and clean. This argument is meritless. The power to condemn due to blight is not limited to specific buildings found to be in disrepair. "[T]he fact that there may be some sound buildings in the slum and blighted area is no defense to the proceedings. Property may be taken which, standing by itself, is unoffending, for the test is based on the condition of the area as a whole." City of Chicago v. Barnes, 195 N.E.2d 629, 631 (Ill. 1964) (citing Berman v. Parker, 348 U.S. 26, 34-35 (1954)). In this case, Joliet has determined that the Evergreen Terrace area as a whole is blighted. Whether the specific building in question is or is not blighted in not relevant.

### 5. Insufficiency of the Complaint

Finally, Defendants assert that the Complaint in this case is insufficient because Joliet has not named the tenants of Evergreen Terrace as Defendants, and because Joliet has not adequately described the interests it seeks to condemn. It is not clear to the court why these issues were not brought in a motion to dismiss. In any event, these assertions are unavailing.

On January 31, 2008, the court granted the Evergreen Tenants' unopposed Motion to Intervene. The tenants of Evergreen Terrace are now Defendants in this case. Rule 71.1 of the Federal Rules of Civil Procedure (former Rule 71A) provides that, in a condemnation action, the Complaint must plainly state the "interests to be acquired." FED. R. CIV. P. 71.1(c)(2)(D). Paragraph 27 of Joliet's Amended Complaint states that it "seeks to acquire the full fee simple

title to the Subject Property." It is difficult to discern how Joliet could have more adequately described the interests it seeks in Evergreen Terrace.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: March 27, 2008