IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF JOLIET, an Illinois Municipal Corporation,<br>          Plaintiff,<br><br>    v.<br><br>MID-CITY NATIONAL BANK OF CHICAGO, et al.,<br><br>          Defendants. | 05 C 6746<br><br>Hon. Charles R. Norgle |

**OPINION AND ORDER**

Before the court is Plaintiff City of Joliet's ("Joliet") Motion to Limit the Fair Housing Act Defenses and for a Stay of Discovery on the Fair Housing Act Claims. For the following reasons, the motion is denied.

## I. BACKGROUND

The court presumes familiarity with the facts and procedural history of this case, as it is well documented in previous opinions by this court and the Seventh Circuit. See City of Joliet v. Mid-City Nat. Bank of Chi., No. 05 C 6746, 2012 WL 638735, n.1 (N.D. Ill. Feb. 22, 2012) (citing cases). The litigation involves three civil rights suits filed by plaintiffs who are defendants in the instant condemnation suit. In the condemnation suit, Joliet seeks to condemn the federally subsidized apartment complex known as Evergreen Terrace. Evergreen Terrace is a 356–unit complex that houses approximately 764 residents, 95 percent of whom are African-American. See United States Compl. ¶ 1. The defendants in the condemnation action are the United States Department of Housing and Urban Development ("HUD"), the tenants of Evergreen Terrace (the "Tenants"), and the

owners of Evergreen Terrace which include New West, L.P. ("New West") (collectively, "Defendants").

The plaintiffs in the civil rights suits—New West, the Tenants, and the United States—allege, *inter alia*, that Joliet violated the Fair Housing Act ("FHA") by taking a series of actions, culminating in the attempted condemnation of Evergreen Terrace. The civil rights plaintiffs allege that, due to the lack of affordable housing in and around Joliet, and because Joliet has failed to produce a meaningful plan to counteract the effect of eliminating the 356 units of subsidized housing, many of the residents of Evergreen Terrace would be left with nowhere in Joliet to live if the condemnation action were successful. The civil rights plaintiffs claim that the "purpose and effect of the City's actions and proposed actions are to limit or reduce the number of Black or African-American residents residing within the City of Joliet. Such actions, if carried out, would have a disproportionate adverse impact on African-Americans and operate to perpetuate segregation in Joliet." United States Compl. ¶ 54. The condemnation defendants assert the FHA as an affirmative defense in the condemnation case.

On January 31, 2012, the court stayed the civil rights cases pending the outcome of a bench trial in the condemnation case, which is set to begin on September 27, 2012.[1]

---

[1] On March 7, 2012, New West filed a petition for a writ of mandamus directing this court to vacate the January 31 Order. On March 27, 2012, the Seventh Circuit denied the petition. New West subsequently filed a petition for a writ of certiorari asking the Supreme Court to consider, *inter alia*, whether the Seventh Amendment (1) "require[s] a district court to try legal claims before equitable claims where those claims are pending in related but separate actions rather than within the same action" or (2) "allow[s] a district court to bench try an equitable action and thereafter accord preclusive effect to its bench findings in a subsequent jury trial of a legal action where the actions are related, and the legal action was filed first." New West's Pet. for Writ of Certiorari to the United States Court of Appeals for the Seventh Circuit, at ii. On June 13, 2012, the petition was distributed for the conference of September 24, 2012.

New West v. City of Joliet, No. 05 C 1743, 07 C 7214, 11 C 5305, 2012 WL 384574 (N.D. Ill. Jan. 31, 2012).

Joliet now moves for judgment on the pleadings on the FHA affirmative defenses pursuant to Federal Rule of Civil Procedure 12(c). Joliet also moves to stay discovery of the FHA claims that Defendants allege as both affirmative defenses in the condemnation case and as affirmative claims in the three civil rights cases.[2]

## II. DISCUSSION

### A. Standard of Decision

#### 1. Rule 12(c)

Rule 12(c) permits judgment based on the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007). The court reviews Rule 12(c) motions "by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Buchanan–Moore v. City of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted); see also Emergency Servs. Billing Corp. v. Allstate Ins. Co., 668 F.3d 459, 464 (7th Cir. 2012). The court construes "the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears

---

[2] The court notes numerous technical problems with Joliet's motion. The first sentence of the motion states that Joliet "moves for summary judgment on or to limit the Fair Housing Act defenses asserted against it by all Defendants." Mot. to Limit FHA Defenses & for Stay of Discovery on FHA Claims 1. The second sentence states that, in addition, Joliet moves, pursuant to Federal Rule of Civil Procedure 26, to stay discovery on the FHA claims. Id. The memorandum in support of the motion does not cite to any Federal Rules and Joliet does not submit a Local Rule 56.1 statement. These deficiencies required Defendants to devote numerous pages of their response briefs to analysis of multiple federal rules under which the motion could potentially be construed. In its reply brief, Joliet clarifies that its motion to stay discovery is brought pursuant to Rule 16(b)(4) and its motion to limit FHA defenses was "inadvertently" designated as a summary judgment motion, and should instead be construed under Rule 12(c). These deficiencies have not prejudiced Defendants because Joliet's motion is without merit no matter how it is construed.

3

beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." Buchanan–Moore, 570 F.3d at 827 (internal quotation marks omitted). The non-movant's alleged facts must "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

### 2. *Rule 16(b)*

Joliet's motion to stay discovery is brought pursuant to Rule 16(b)(4), which provides that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case 'moving toward trial.'" Alioto v. Town of Lisbon, 651 F.3d 715, 720 (7th Cir. 2011). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." Id. (citation omitted).

### B. Motion for Judgment on the Pleadings

Joliet argues that it is entitled to judgment on the pleadings on the FHA affirmative defenses in their entirety or, in the alternative, on those defenses to the extent they are based on alleged disparate impact rather than on intentional discrimination. The court begins with a brief discussion of eminent domain and the FHA.

"For more than a century, our public use jurisprudence has wisely eschewed rigid formulas and intrusive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power." Kelo v. City of New London, 545 U.S. 469, 483 (2005). That broad latitude, however, is not without limitation—a taking will only fulfill the public use requirement if it serves a legitimate public purpose within the government's authority. Id. at 477-78; see also

Tahoe–Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 336 (2002) ("The concepts of 'fairness and justice' . . . underlie the Takings Clause"). Clearly, then, a municipality is not "allowed to take property under the mere pretext of a public purpose. . . ." Kelo, 545 U.S. at 478.

Congress's purpose in passing the FHA was "to provide, within constitutional limitations, for fair housing throughout the United States," 42 U.S.C. § 3601, as well as to "promote open, integrated residential housing patterns and to prevent the increase of segregation, in ghettos, of racial groups whose lack of opportunities the Act was designed to combat," Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights, 558 F.2d 1283, 1289 (7th Cir. 1977) (internal quotation marks and citations omitted) [hereinafter "Arlington Heights II"]. To that end, the FHA makes it unlawful to "refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(a), as well as to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section . . . 3604 . . . of this title," 42 U.S.C. § 3617. The FHA also provides that "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid." 42 U.S.C. § 3615. "The language of the Fair Housing Act is 'broad and inclusive,' [and is] subject to 'generous construction.'" Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights, 616 F.2d 1006, 1011 (7th Cir. 1980) (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209, 212 (1972)); see also Hispanics United of DuPage Cnty. v. Vill. of Addison,

988 F. Supp. 1130, 1150 (N.D. Ill. 1997) ("[C]ourts are to apply the FHA's terms liberally.").

To the extent Joliet argues that the FHA affirmative defenses should be dismissed in their entirety, the court previously rejected the substance of this argument when it denied Joliet's motion to dismiss the civil rights complaints in January 2012:

> Joliet advances the anemic proposition that, as a matter of law, bringing an eminent domain action cannot constitute a violation of law, and thus the plaintiffs' suits should be dismissed. The Seventh Circuit has already disagreed with this position: "A state or local government is not free to use its powers in order to discriminate against persons of a particular race . . . ." City of Joliet, 562 F.3d at 837. Bringing an eminent domain action may violate federal law if it is brought to discriminate. See id. Joliet's argument is meritless and borderline frivolous.

New West v. City of Joliet, No. 05 C 1743, 07 C 7214, 11 C 5305, 2012 WL 366733, at *6 (N.D. Ill. Jan. 30, 2012).

This ruling is dispositive here and Joliet has not asked that it be reconsidered. Defendants have pled that Joliet is using its municipal authority to pursue condemnation for the express purpose of denying African-Americans their right to housing in Joliet. If proven at trial, this is a defense to Joliet's assertion that it has a legitimate public purpose. That is the law of the case as established by this court and the Seventh Circuit. Id.; cf. City of Joliet v. New West, L.P., 562 F.3d 830, 837 (7th Cir. 2009) ("[F]ederal law limits the use of condemnation powers (as well as zoning or building codes) to turn a jurisdiction into an all-white, upper-income enclave." (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977)). Indeed, Joliet appears to concede this argument when it admits in its reply brief that the condemnation "will lack a public purpose" if it "is a pretext for intentional discrimination." Joliet's Reply in Supp. of Mot. to Limit FHA Defenses 6.

Joliet also argues that judgment on the pleadings is appropriate because, given its stated public purpose of eliminating blight, discrimination could not have been the "sole motive" for the condemnation. See id. at 3. But to survive a Rule 12(c) motion, Defendants need not plead that discrimination was the "sole motive" for the condemnation. In Village of Arlington Heights, the Supreme Court recognized that "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Vill. of Arlington Heights, 429 U.S. at 266. The Court made clear that the injured party need not prove that the challenged action was motivated solely by a purpose to discriminate:

> Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the "dominant" or "primary" one. In fact, it is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality. But racial discrimination is not just another competing consideration. When there is a proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified.

Id. at 265-66 (emphasis added) (footnotes omitted). Joliet's contention that Defendants must allege discrimination to be the "sole motive" of the condemnation is without merit.

Joliet next argues that Defendants' disparate impact defenses, "to the extent they are separate from their discriminatory intent claims," Joliet's Reply in Supp. of Mot. to Limit FHA Defenses 4, are "not valid defenses to an eminent domain action as a matter of law," id. at 1. For the reasons discussed below, Joliet's argument is not persuasive.

The Seventh Circuit, in Arlington Heights II, was one of the first circuits to hold that claims of disparate impact are cognizable under the FHA. The Arlington Heights

litigation resulted from the Village of Arlington Heights' refusal to rezone certain property within its corporate boundaries to permit construction of federally subsidized low-cost housing, with the result that low-income families, who were predominantly African-American, were excluded from the nearly all-white Village. The Seventh Circuit explained in Arlington Heights II that:

> In light of the declaration of congressional intent provided by section 3601 and the need to construe the [FHA] expansively . . . we decline to take a narrow view of the phrase "because of race" contained in section 3604(a). Conduct that has the necessary and foreseeable consequence of perpetuating segregation can be as deleterious as purposefully discriminatory conduct in frustrating the national commitment to replace the ghettos by truly integrated and balanced living patterns. Moreover, a requirement that the plaintiff prove discriminatory intent before relief can be granted under the statute is often a burden that is impossible to satisfy. Intent, motive and purpose are elusive subjective concepts, and attempts to discern the intent of an entity such as a municipality are at best problematic. . . . We cannot agree that Congress in enacting the Fair Housing Act intended to permit municipalities to systematically deprive minorities of housing opportunities simply because those municipalities act discreetly.

Arlington Heights II, 558 F.2d at 1289-90 (internal quotation marks and citations omitted). The court therefore held that, "at least under some circumstances a violation [of the FHA] can be established by a showing of discriminatory effect without a showing of discriminatory intent." Id. at 1290.

In doing so, the court developed a balancing test and identified four factors to consider when determining whether the conduct that produces the disparate impact violates the FHA: (1) the strength of the plaintiff's showing of discriminatory effect; (2) evidence of discriminatory intent, though not enough to satisfy the constitutional standard of Washington v. Davis, 426 U.S. 229 (1976); (3) the defendant's interest in the challenged conduct; and (4) whether the plaintiff seeks affirmative relief or merely to

restrain the defendant from interfering with individual property owners who wish to provide housing. Id. This "modified disparate impact theory" remains the law in this Circuit. Bloch v. Frischholz, 587 F.3d 771, 784 (7th Cir. 2009) (en banc); see also Davis v. Wells Fargo Bank, 685 F. Supp. 2d 838, 845-46 (N.D. Ill. 2010); Hispanics United of DuPage Cnty., 988 F. Supp. at 1151; Flores v. Vill. of Bensenville, No. 00 C 4905, 2003 WL 1607795, at *6 (N.D. Ill. Mar. 26, 2003).[3]

Joliet argues, however, that disparate impact theory should not apply in the context of eminent domain actions because this would "demand a detailed and burdensome review of the effects of the plaintiff locality's redevelopment plan" and would have a "huge effect . . . on eminent domain law." Joliet's Reply in Supp. of Mot. to Limit FHA Defenses 5. Joliet argues, therefore, that the presumed burden on municipal governments of subjecting their redevelopment plans to disparate impact analysis should by itself bar the application of such analysis. Joliet's argument is without merit.

"The FHA is a broadly remedial statute . . . that facilitates its antidiscrimination agenda by encouraging a searching inquiry into the motives behind a contested policy to ensure that it is not improper." Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mt. Holly, 658 F.3d 375, 385 (3d Cir. 2011) (internal citations omitted). While Joliet is correct that disparate impact analysis will demand a more detailed and searching

---

[3] While the Supreme Court has never considered whether disparate impact claims are cognizable under the FHA, "[a]ll of the courts of appeals that have considered the matter . . . have concluded that plaintiffs can show the FHA has been violated through policies that have a disparate impact on a minority group." Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mt. Holly, 658 F.3d 375, 384 (3d Cir. 2011). On February 29, 2012, the Supreme Court was set to hear argument on this issue. Before argument, however, the case was dismissed by agreement of the parties. See Gallagher v. Magner, 619 F.3d 823, 833-39 (8th Cir. 2010), cert. granted, 132 S. Ct. 548 (2011), cert. dismissed, 132 S. Ct. 1306 (2012). The court remains bound by Arlington Heights II, the Seventh Circuit's leading case on FHA disparate impact claims against municipal defendants.

review of the record, this is not a basis upon which to dismiss disparate impact theory from this case. To the contrary, the searching inquiry into the Joliet's motivations "is precisely the sort of inquiry required to ensure that the government does not deprive people of housing 'because of race.'" Id. The court "need not be concerned that this approach is too expansive because the establishment of a *prima facie* case, by itself, is not enough to establish liability under the FHA." Id.

Moreover, beyond its general assertion that it would be overly burdensome, Joliet provides no rationale in support of exempting eminent domain from the application of disparate impact analysis. Indeed, the potential effect of condemnation actions in making unavailable or denying housing to minorities, 42 U.S.C. § 3604(a), is as great, if not greater, than in Arlington Heights II, see, e.g., Mt. Holly Gardens Citizens in Action, Inc., 658 F.3d at 377, 381-84 (applying disparate impact theory under the FHA where the Township "proposed a redevelopment plan that would eliminate the existing homes in its Gardens neighborhood, occupied predominantly by low-income residents, and replace them with significantly more expensive housing units").

Furthermore, Joliet cites no precedent, statutory language, or legislative history to support this argument. The court accepts Joliet's assertion that there is no Seventh Circuit or Supreme Court case applying disparate impact analysis to an eminent domain action. Joliet's Reply in Supp. of Mot. to Limit FHA Defenses 5. Nevertheless, given the FHA's twin purposes of eliminating housing discrimination and furthering housing integration, the Seventh Circuit's application of disparate impact in Arlington Heights II, as well as the unanimity of the circuit courts of appeals in applying some form disparate

impact analysis under the FHA, this court is unwilling to rule as a matter of law that disparate impact analysis cannot apply to eminent domain actions.

Having determined that Joliet's eminent domain power is constrained the FHA, and given that the "federal civil rights challenges to condemnation actions should be resolved in the condemnation action itself," New West, 2012 WL 384574, at *7, disparate impact, as defined in Arlington Heights II, is a proper theory for establishing an FHA violation and, therefore, a prima facie affirmative defense to Joliet's condemnation action.

The court briefly addresses Joliet's additional arguments. In its reply, Joliet contends that the FHA defenses should be "limited" because they are "based on speculation about what will happen as a result of Joliet's redevelopment plans." Joliet's Reply in Supp. of Mot. to Limit FHA Defenses 4. On a Rule 12(c) motion, the court takes Defendants' pleadings as true unless they are implausible under Iqbal, which is not the case here. The court need not engage in "speculation" to determine that, as pled, it is plausible that the condemnation will reduce available housing to African-Americans in Joliet. Joliet's speculation argument is therefore without merit.

Joliet also contends that the FHA affirmative defenses should be "limited" (or stayed, as discussed below) because "it has no intention of simply demolishing Evergreen Terrace or evicting its tenants," Joliet's Mem. in Supp. of Mot. to Limit FHA Defenses & Stay Discovery on FHA Claims 1, and because "it believes that HUD will have no objection to its subsequent use of the property," id. at 6. Joliet asserts that the condemnation will in fact do nothing to limit minority housing in Joliet. This argument is flawed for numerous reasons.

11

First, this is an issue of fact that is outside the scope of the pleadings and therefore inappropriate on a Rule 12(c) motion. Defendants have pled, *inter alia*, that the "vast majority of the tenants at the subsidized housing property Joliet seeks to eliminate are very low income, African-Americans for whom there is effectively no alternative housing in the city;" that Joliet is determined to demolish "nearly all the family public housing in the city;" that the "[e]limination of Evergreen Terrace would force this population from the majority-white west side of Joliet;" and that "Joliet's condemnation of Evergreen Terrace is part of a pattern and practice aimed at making housing in Joliet unavailable to African-Americans and/or aimed at segregating this population." Fed. Def.'s Answer to Sec. Am. Compl., at Eleventh Defense. Joliet's representation as to its current intentions cannot limit the claims or theories explicitly set forth in the pleadings for purposes of a Rule 12(c) motion.

Furthermore, Joliet's argument is inconsistent with its aforementioned speculation argument. On the one hand, Joliet contends that the court must not speculate about "what will happen as a result of Joliet's redevelopment plans" yet on the other hand asks the court to trust its representation as to the actions it will take after the condemnation. Joliet cannot have it both ways. Finally, Joliet's assertion that HUD will have no objection to its subsequent use of the property is belied by Defendants' numerous affirmative defenses, active litigation of the affirmative civil rights cases, and vigorous opposition to this motion. According to HUD, Joliet's assertion is "disingenuous" and "flatly inconsistent with the relief sought in the Complaint." HUD's Opp. to Joliet's Mot. to Limit FHA Defenses & Stay Discovery on FHA Claims 13, n.1. As the court previously recognized, "Joliet has for years been trying informally to raze the apartments, and for the

past six years suing to take Evergreen Terrace through eminent domain." New West, 2012 WL 366733, at *3. If Joliet believes that HUD will have no objection to its subsequent use of the property, the court would, of course, encourage the parties to explore the possibilities of settlement. However, based on the current record, Defendants' allegations that the condemnation would "make unavailable or deny, a dwelling," 42 U.S.C. § 3604(a), is plausible and, therefore, sufficient as a prima facie affirmative defense under the FHA. Of course, under the first prong of the Arlington Heights II balancing test, Joliet may attack the strength of the Defendants' showing of discriminatory effect by proving, for example, that its post-condemnation plans will in fact promote integrated housing and/or not unduly burden minority residents. Joliet's request that the court assume these outcomes on a Rule 12(c) motion for judgment on the pleadings, however, has no basis in law.

**C. Motion to Stay FHA Discovery**

The three civil rights cases and the instant condemnation case are, by agreement of the parties, consolidated for discovery under Rule 42. See Pretrial Scheduling Order ¶ 1 ("The parties agree that [the condemnation case and civil rights cases] should be consolidated for purposes of discovery."); see also New West, 2012 WL 366733, at *1. As the court has previously recognized, the FHA claims for legal relief in the civil rights cases "overlap[] or completely mirror[]" the equitable FHA affirmative defenses in the condemnation case. New West, 2012 WL 384574, at *3.

Joliet argues that, pursuant to Rule 16(b)(4), there is good cause to modify the Scheduling Order, un-consolidate discovery, and stay discovery of FHA issues because "circumstances have changed" since it first agreed to consolidation in the Proposed

13

Pretrial Scheduling Order, submitted on August 5, 2011, and entered by the Court on September 30, 2011. Joliet's Reply in Supp. of Mot. to Stay Discovery on FHA Claims 1. More specifically, Joliet claims that it has only recently come to understand the scope of the FHA affirmative defenses. Id. Joliet explains that it was not until a February 17, 2012 conference call that it understood Defendants' argument that the condemnation could be stopped if brought with discriminatory intent or effect. Joliet contends that this new understanding amounts to a changed circumstance justifying modification of the Scheduling Order. Joliet's argument is unsupportable and oblivious to the record in this case.

Joliet has been on notice of the FHA affirmative defense since at least 2009, when it was spelled out in HUD's Second Amended Answer to the Amended Complaint, Eleventh Defense:

> Joliet's condemnation of Evergreen Terrace is barred as an unlawful exercise of its eminent domain authority in violation of the Fair Housing Act (42 U.S.C. § 3604), Article 3 of the Illinois Human Rights Act (775 ILCS 5/3-101), Article 1 § 17 of the Illinois Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The vast majority of the tenants at the subsidized housing property Joliet seeks to eliminate are very low income, African-American, female-headed families for whom there is effectively no alternative housing in the city, a situation exacerbated by Joliet's determination and actions to have nearly all the family public housing in the city demolished. Elimination of Evergreen Terrace would force this population from the majority-white west side of Joliet. Joliet's condemnation of Evergreen Terrace is part of a pattern and practice aimed at making housing in Joliet unavailable to African-American, female-headed households with minor children and/or aimed at segregating this population in violation of the Fair Housing Act (42 U.S.C. § 3604), Article 3 of the Illinois Human Rights Act (775 ILCS 5/3-101), Article 1 § 17 of the Illinois Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Federal Def.'s Sec. Am. Answer to Am. Compl. 19-20 (filed Oct. 28, 2009); see also Tenant's First Am. Answer & Aff. Defenses to Joliet's Am. Compl. for Condemnation 18-19 (filed Oct. 7, 2011) ("The City of Joliet's efforts to condemn Evergreen Terrace disparately impact African-American residents and female-headed families with minor children and result in segregating this population."). Defendants have maintained, well before February 17, 2012, that the condemnation cannot go forward if it were undertaken with a discriminatory intent and/or would have a discriminatory impact on African-Americans in violation of the FHA.

If that were not enough to raise Joliet's awareness as to the scope of the FHA affirmative defenses, the Seventh Circuit and this court have both recognized that Joliet's eminent domain power is constrained by constitutional and statutory rights, and that FHA issues should be resolved in the condemnation case. See City of Joliet, 562 F.3d at 838 (explaining that Joliet's exercise of eminent domain power could be challenged on the basis that it has "an intent, or an effect, forbidden by the Constitution or a federal statute"); see also New West, 2012 WL 384574, at *7 ("[The] federal civil rights challenges to condemnation actions should be resolved in the condemnation action itself."). Moreover, this court has specifically recognized one of HUD's arguments in this case to be that "Joliet is acting with discriminatory intent and for discriminatory effect," in violation of the FHA. New West, 2012 WL 366733, at *5. Joliet has been, or at least should have been, well aware of the scope of Defendants' FHA affirmative defenses for years. Accordingly, there is no reasonable basis upon which Joliet can argue that its alleged February 17, 2012 change in understanding amounts to good cause to modify the Scheduling Order.

Joliet's motion is also at odds with Rule 26, which permits parties in litigation to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Defendants are entitled to broad discovery on their FHA affirmative defenses, including discovery regarding the purposes or motives underlying Joliet's stated public purpose. With respect to discriminatory intent, for example, this may include discovery regarding: the "impact of the official action"; the "specific sequence of events leading up the challenged decision"; the "historical background of the decision"; or the "legislative or administrative history . . . especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." Vill. of Arlington Heights, 429 U.S. at 266-68. The Supreme Court explained that this list is illustrative, not exhaustive. Id. at 268. Joliet's lack of awareness as to what is involved in the discovery of an FHA claim does not amount to good cause for a modification of the Scheduling Order. Moreover, a stay of discovery on FHA issues would be entirely inappropriate given that the FHA challenges to the condemnation are to be resolved in the condemnation case.[4]

Finally, the court rejects Joliet's additional assertion that the Scheduling Order should be modified because the trial date has been expedited (by under three months) or because the civil rights cases have been stayed. With respect to the latter, Joliet believes that it "should not beat [sic] the burden of conducting and responding to discovery not

---

[4] The court further notes that, given the broad discovery available under the FHA discriminatory intent defense, the discovery at issue in this motion would be warranted even if the court agreed with Joliet's argument that disparate impact should be barred.

relevant to its claims or the defenses in the eminent domain trial." Joliet's Reply in Supp. of Mot. to Stay Discovery on FHA Claims 5. However, as set forth above, broad discovery under the FHA is relevant to <u>this</u> case; the fact that the civil rights cases are stayed is irrelevant. With respect to the former, the fact that the trial date has been moved up approximately three months does not create good cause under Rule 16(b). This is especially true where Defendants have represented that, so long as Joliet complies with the discovery plan, they are prepared to complete discovery in accordance with the current Scheduling Order.

Joliet has not demonstrated good cause to modify the Scheduling Order. These cases shall remain consolidated for discovery. As with Defendants, Joliet has the opportunity under the Federal Rules to obtain discovery on the numerous defenses that remain in this case. Given the fast-approaching September 27 trial date, and consistent with Rule 16(b)'s aim to keep cases "moving toward trial," discovery in this matter should proceed apace.

## III. CONCLUSION

For the foregoing reasons, Joliet's Motion to Limit the Fair Housing Act Defenses and for a Stay of Discovery on the Fair Housing Act Claims is denied. This case remains set for bench trial on September 27, 2012.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: June 28, 2012