**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF JOLIET, <br><br> Plaintiff, <br><br> vs. <br><br> MID-CITY NAT'L BANK OF CHICAGO, et al., <br><br> Defendant. | ) <br> ) <br> ) <br> ) CASE NO. 05 C 6746 <br> ) <br> ) JUDGE NORGLE <br> ) <br> ) <br> ) <br> ) |

## EVERGREEN TERRACE TENANTS' MOTION TO RECONSIDER THE JULY 16, 2013 ORDERS REGARDING THE 2013 REAC INSPECTIONS

The named Evergreen Terrace tenants ("Tenants" or "Tenant-Defendants") respectfully submit this motion to reconsider and vacate the July 16, 2013 orders regarding the April 23 – 24, 2013 inspections of Evergreen Terrace by the HUD's Real Estate Assessment Center ("REAC"), in response to the Court's September 30, 2013 request. In support of their motion, the Tenants state as follows:

1. On April 4, 2013, Plaintiff City of Joliet filed a Motion in Limine to bar evidence at trial referring or relating to inspections of Evergreen Terrace I and II that were not disclosed as of March 7, 2013. ECF No. 659.

2. The Tenants filed a response brief on April 18, 2013 opposing the City's requested relief and responding to certain of the City's statements regarding the course of discovery in this matter. ECF No. 671.

3. On May 3, 2013, HUD filed a sur-reply in opposition to the City's motion, attaching an affidavit from REAC inspector Rhonda Caplinger, which discussed various details of the 2013 REAC inspections. ECF No. 684-2.

1

4. On June 19, 2013, counsel for HUD, Max Lapertosa, raised the matter of the testimony of Rhonda Caplinger and the City of Joliet's then-pending motion *in limine* to exclude testimony regarding the 2013 REAC inspections. The Court asked Mr. Lapertosa, "who ordered [Ms. Caplinger] to conduct the [2013 REAC] inspection?" Mr. Lapertosa responded, "I'm not sure exactly who would have ordered her to do it . . . . I can find that out." The Court requested information relating to the circumstances giving rise to the 2013 REAC inspection, including "who ordered her to do it and when did you order her to do it?" Mr. Lapertosa again responded, "I can find that out for you." (Tr. at 11699-11673.)

5. The issue arose again on July 16, 2013 when counsel for the Owner-Defendants raised the issue of the admissibility of the 2013 REAC inspections during the testimony of Linda Capriotti prior to embarking on a set of questions on the inspections with Ms. Capriotti. In response to the Owner-Defendants counsel's question regarding the admissibility of the 2013 REAC inspections, the Court stated, "Well, a part of this was the counsel for HUD made a representation that he would have an affidavit. I haven't seen it." (Tr. at 12049.) Counsel for HUD, Kate Elengold, responded that "there was an affidavit submitted as part of the sur-reply. It was submitted to the Court in response to Joliet's motion in limine from Rhonda Caplinger, C-A-P-L-I-N-G-E-R. She is also scheduled to testify." Ms. Elengold represented that the affidavit stated that Ms. Caplinger "was the REAC inspector. She was the one that actually went out on behalf of HUD REAC to do the inspection on those dates and that they were done as REAC inspections were usually done. That's the grit of it." The Court asked if the inspection was "routinely done and not ---- not reactionary to the difficulties that Mr. Hinsberger was having on the stand with respect to the purging issue from the computer?" Ms. Elengold responded that the

"REAC was done, yes, in the regular course of business." Ms. Elengold was asked to provide a copy of Ms. Caplinger's affidavit to the Court after the lunch break. (Tr. at 12050-51.)

6. After the lunch break, Ms. Elengold provided a copy of the affidavit to the Court and the following colloquy ensued:

> MS. ELENGOLD: Your Honor, while we wait for the witness, I have a copy of the affidavit. And I want to apologize to the Court. I think in my brain I had completed what I think --- what I understand the testimony was going to be and what's in the affidavit. So I apologize for that. Here is the affidavit itself.
>
> THE COURT: Are you talking, counsel, about the declaration of Rhonda Caplinger?
>
> MS. ELENGOLD: Yes, your Honor. Rhonda Caplinger was the REAC inspector for HUD who did the April 2013 inspection at Evergreen Terrace I.
>
> THE COURT: Now just a minute. You misrepresented something before the break.
>
> MS. ELENGOLD: As I said, I apologize to the Court.
>
> THE COURT: Is that what it is?
>
> MS. ELENGOLD: It was not a misrepresentation. It was a mistake, and I do apologize.
>
> THE COURT: But this is not the first time this has come up. You made a misrepresentation as to what this affidavit says.
>
> MS. ELENGOLD: Your Honor, I ---
>
> THE COURT: The question was the routineness of the inspection. And you made the representation.
>
> MS. ELENGOLD: Your Honor, I did make a representation.
>
> THE COURT: Let me say this. This is not a matter of apology. You are admonished this should not happen again. This is by no means is the kind of affidavit that HUD said an attorney for HUD represented that he would have.
>
> Now you can make whatever statement you want to make.
>
> MS. ELENGOLD: Your Honor, Ms. Caplinger is the REAC inspector. As it states in the affidavit, she's a quality --- let me get the words correct --- a quality assurance inspector for HUD's real estate assessment center.

> She was the inspector who did the inspection, actually went out to Evergreen Terrace I and II property for the REACs that are at issue in the City of Joliet's motion in limine.
>
> . . . And she will be able to tell the Court exactly what she did, exactly on whose orders she did her work, and then be subject to cross examination.
>
> And so we would request that the Court reserve ruling on the City of Joliet's motion in limine until it can hear from the person who actually went out and did the inspection. And she can state exactly how she did it under oath, under what circumstances she did the inspection.
>
> THE COURT: The sanction for your misrepresentation to the Court and the assertion earlier by counsel on behalf of HUD that you would have an affidavit by someone in the higher position than the inspector herself to say that this inspection was carried out routinely and not on the heels, so to speak, of the testimony of Hinsberger, that was represented by another attorney for HUD, that affidavit is not before the Court.
>
> And you made a misrepresentation before the break as to what the affidavit says. And this by no means deals with the issue. And therefore, the sanction is imposed for this reason as a sanction and also for the reasons raised by Joliet, that report is in admissible, and the testimony of that inspector is barred.

(Tr. at 12054-56.)

7. On July 17, 2013, the Court issued a written order granting Joliet's Motion in Limine for the reasons stated in open court on July 16, 2013. ECF No. 752.

8. On July 18, 2013, the Owner-Defendants filed a Motion to Reconsider July 16, 2013 Orders Barring Testimony of Rhonda Caplinger and Linda Capriotti Regarding 2013 REAC Inspections. ECF No. 754.

9. On July 19, 2013, the Tenants moved to join the Owner-Defendants' Motion to Reconsider. ECF No. 756.

10. On July 24, 2013, defendant HUD filed a Motion to Reconsider the July 16, 2013 Orders Barring Testimony of Rhonda Caplinger and Linda Capriotti Regarding the 2013 REAC Inspections. ECF No. 758. HUD also included declarations from Delton Nichols, Michelle Schmidt, and Kimberlee Scoles regarding the 2013 REAC inspections. ECF No. 758-9, -10, -11.

HUD stated in its reply in support of its July 24, 2013 motion to reconsider that Ms. Elengold's statement on July 16 resulted from an "honest mistake" made with "no intent by counsel for HUD to withhold information from the Court or to refuse to provide the answer to the Court's question." ECF No. 793 at 8.

11. By order entered July 29, 2013, the Court denied the Tenants' motion to join and stated that "[a]fter due diligence to include examining the transcripts of remarks made by Mr. Lapertosa, counsel for HUD, on July 19, 2013, the Evergreen Terrace Tenants are granted leave to file their own distinct and individual motion regarding the ruling of the Court on July 15, 2013." ECF No. 762.

12. On September 30, 2013, the Court stated that the Tenant-Defendants "should be heard on this" matter and directed the Tenant-Defendants to review the "different statements contained within the transcripts" and to file a submission. (Tr. at 14128-29.)

13. The Tenant-Defendants' position is that the 2013 REAC inspections go to a central issue in this case—the current condition of Evergreen Terrace. The Court has previously acknowledged the relevance of this issue: "because seven years have passed since the filing of the condemnation action and the parties agree that the Subject Property has benefited from $5 million in improvements, the court's public purpose analysis should consider the property as it exists today." ECF 584 at 16. Further, "[t]he question is not whether the evidence has great probative weight, but whether it has any, and whether it in some degree advances the inquiry." ECF No. 584 at 5 (quoting *Davis v. Doran*, 276 F.R.D. 227, 230 (N.D. Ill. 2011)). Accordingly, because evidence regarding the 2013 REAC inspections is probative of the current condition of Evergreen Terrace, which is relevant to the issue of blight, the evidence meets the requirements of admissibility under Federal Rule of Evidence 401.

14. The Tenant-Defendants have reviewed the portions of the June 19 and July 16 trial transcripts that gave rise to the Court's sanction of HUD. Although the Court did not specify the precise form in which HUD should provide the information requested on June 19, it did stress the importance of finding out "who ordered [Ms. Caplinger] to do [the 2013 REAC inspection] and when did [he or she] her to do it?" (Tr. at 11699-11673.) As of July 16, HUD had not provided the requested information regarding who directed Ms. Caplinger to conduct the 2013 REAC inspection and when that directive was given. Ms. Elengold's pre-lunch statement on July 16 was incorrect, in that the affidavit from Ms. Caplinger that HUD submitted with its sur-reply brief on May 3, 2013 did not state that the REAC inspection was done in the regular course of business. Ms. Elengold advised the Court that her statement was incorrect after Court resumed on the afternoon of July 16.

15. The Tenant-Defendants respectfully believe that the evidence-exclusion sanction imposed upon HUD should not apply to the Tenant-Defendants. The Tenant-Defendants do not have first-hand knowledge regarding the circumstances giving rise to the 2013 REAC inspection or the manner in which the 2013 REAC inspection was conducted. The Tenant-Defendants did not possess the information requested by the Court on June 19. The Tenant-Defendants also were not involved in the preparation of any of the affidavits from HUD personnel regarding the inspection. HUD's failure to provide the requested information regarding who directed the inspection to occur and when that was done and its incorrect statement regarding Ms. Caplinger's affidavit should not serve as a basis to preclude the Tenant-Defendants from seeking

to introduce relevant evidence. *See United States v. Herrera*, 366 F. A'ppx 674, 676-677 (7th Cir. 2010).[1]

16.  Regardless of whether or not HUD is permitted to seek to introduce evidence regarding the 2013 REAC inspections, the Tenant-Defendants should be allowed the opportunity to do so. The City has raised questions regarding the reliability of the results of the 2013 REAC inspections. If there are issues regarding the admissibility or reliability of the evidence regarding the 2013 REAC inspections, then those issues should be subjected to the adversarial process, including testimony from witnesses with first-hand knowledge and cross-examination by Joliet, before the Court rules on the evidence's ultimate admissibility. Allowing the Tenant-Defendants to seek to admit evidence regarding the 2013 REAC inspections through testimony by percipient witnesses and subject to cross-examination also will aid the Court in assessing the weight to give the evidence if it is admitted. Thus, the Tenant-Defendants believe they should be afforded the opportunity to seek to introduce evidence regarding the 2013 REAC inspections.

WHEREFORE, for the foregoing reasons, the Tenant-Defendants respectfully request that this Court reconsider and vacate the July 16, 2013 orders regarding the April 23 – 24, 2013 REAC inspections.

---

[1] In its Response in Opposition to HUD's and New West/New Bluff's Motions to Reconsider, the City suggests in a footnote that because counsel for the Tenant-Defendants have defended this matter under a Joint Defense Agreement with HUD, the Tenant-Defendants must have known facts regarding the REAC inspections that the City contends were not properly disclosed to the City during discovery. The Tenant-Defendants believe they have adequately addressed those issues in their April 18, 2013 opposition to the City's motion *in limine*. ECF No. 671.

Dated: October 7, 2013

Respectfully submitted,

EVERGREEN TERRACE TENANTS

By: /s/ *Reena R. Bajowala*
One of their Attorneys

Jeffrey S. Eberhard #6276471
Reena R. Bajowala #6286255
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

John Bouman #260983
Katherine E. Walz #6238318
SARGENT SHRIVER NATIONAL
CENTER ON POVERTY LAW
50 E. Washington Street, Suite 500
Chicago, Illinois 60602
Telephone: (312) 263-3830
Facsimile: (312) 263-3846

## **CERTIFICATE OF SERVICE**

      I, REENA R. BAJOWALA, an attorney, certify that on October 7, 2013, the foregoing document was served on all attorneys of record in this action using the CM/ECF system.

                                                        /s/ *Reena R. Bajowala*